UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

GREENEVILLE DIVISION

JASON SCOTT MOORE, individually and as next friend of Z.J.M., a minor child,

Plaintiff,

2:25-cv-186
Corker/Wyrick

FILED
NOV 05 2025
Clerk, U. S. District Court
Eastern District of Tennessee
At Greeneville

v.

CITY OF KINGSPORT, TENNESSEE;

JASON BELLAMY, in his individual and official capacities as Chief of Police;

DALE PHIPPS, in his individual and official capacities as former Chief of Police;

OFFICER LEONARD, in his individual capacity;

OFFICER HAMMONDS, in his individual capacity;

OFFICER ZACH CALHOUN, in his individual and official capacities;

OFFICER HALL, in his individual capacity;

CAPTAIN WILLIAM KEVIN CLARE, in his individual capacity;

RODNEY BART ROWLETT III, in his individual and official capacities as City Attorney;

ABBY FORD, in her individual capacity;

KINGSPORT CITY SCHOOLS;

DR. CHRIS HAMPTON, in his individual and official capacities as Superintendent;

CAROLYN SUZANNE LEWIS, in her individual capacity;

JANA BENEDICT, in her individual capacity;

SARAH LOCKETT, in her individual capacity;

TAMMY WILLIAMS, in her individual capacity;

SUZANNE ZAHNER, in her individual capacity;

MARIOLOU CAUNAN ZAMORA, in her individual capacity;

FORMER SUPERINTENDENT JEFF MOORHOUSE, in his individual capacity;

HR DIRECTOR JENNIFER GUTHRIE, in her individual capacity;

PRINCIPAL STACY EDWARDS, in his individual capacity;

MICHELLE CARPENTER, in her individual capacity;

TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES (DCS);

MICHAEL GILLY, in his individual and official capacities as Assistant General Counsel, Northeast Region Tennessee DCS;

CARRIE SEARCY, in her individual and official capacities as Senior Associate Counsel, Tennessee DCS;

JIM HYCHE, in his individual and official capacities as Regional General Counsel, Northeast Region Tennessee DCS;

KRISTY TIMMERMAN, in her individual and official capacities as MSSW Program Manager, Tennessee DCS;

FREDIA TOOMBS, in her individual and official capacities as Case Supervisor, Tennessee DCS;

CHRISTINA POTTER, in her individual and official capacities as Case Supervisor, Tennessee DCS;

TIERRA WARD, in her individual capacity as Caseworker, Tennessee DCS;

KELSEY MCKINNEY, in her individual capacity as Caseworker, Tennessee DCS;

RACHEL VANSANT, in her individual capacity as Caseworker, Tennessee DCS;

CHRISTY PIERCE, in her individual capacity as Caseworker, Tennessee DCS;

MEGAN SKERRITT, in her individual capacity as Caseworker, Tennessee DCS;

JOHN DOE OFFICERS 1-5, in their individual capacities;

JANE DOE EMPLOYEES 1-5, in their individual capacities,

Defendants.

CIVIL ACTION NO.: [To be assigned by Court]

JURY TRIAL DEMANDED

SECOND AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS AND STATE LAW

Plaintiff, Jason Scott Moore, individually and as next friend of Z.J.M., a minor child, appearing pro se, for his Second Amended Complaint against Defendants, alleges as follows:

I. INTRODUCTION

1. This is an action brought pursuant to 42 U.S.C. Section 1983, 42 U.S.C. Section 1985, and state law for the deprivation of Plaintiff's and Z.J.M.'s constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, as well as for various state law torts, arising from a deliberate and coordinated campaign of retaliation, abuse of power, and systemic failures by the Defendants.

2. Plaintiff, a highly decorated retired Military Police officer, reported credible child abuse involving his son, Z.J.M. (who is biracial, half-Asian and half-Caucasian), to Kingsport City Schools ("KCS"), the Kingsport Police Department ("KPD"), and the Tennessee Department of Children's Services ("DCS"). These reports were corroborated by medical professionals, forensic interviewers, and independent witnesses, including a Virginia Protective Order. Critically, DCS had an open case on Z.J.M.'s mother, Defendant Mariolou Caunan Zamora, since December 2020, demonstrating long-standing knowledge of abuse allegations, yet allegedly failed to act in any meaningful way to protect Z.J.M. and actively suppressed efforts to protect him.

3. In response to Plaintiff's efforts to protect his child and to expose systemic failures, Defendants engaged in a malicious and retaliatory campaign against Plaintiff, culminating in his unlawful arrest, excessive force, and a baseless criminal prosecution for filing a "false report" of child abuse. This campaign was orchestrated following a high-level meeting among city officials to "silence" Plaintiff. The alleged conspiracy of silence and

obstruction extended to the Tennessee Department of Children's Services and the Kingsport Police Department, with their legal counsel and investigators allegedly coordinating with municipal officials, and their caseworkers and supervisors failing to act, to suppress evidence of child abuse and mandatory reporting failures in judicial proceedings and investigations.

4. Defendants, including high-ranking police officials, the City Attorney, school administrators, and multiple officials from the Tennessee Department of Children's Services, actively protected an alleged child abuser (Plaintiff's ex-wife, Defendant Mariolou Caunan Zamora) and engaged in a conspiracy to obstruct justice, deny Plaintiff due process, and retaliate against him for exercising his constitutionally protected rights. Upon information and belief, this conspiracy was motivated by class-based animus against Plaintiff as a disabled veteran and protective parent, and/or against Z.J.M. as a biracial child and a male victim of sexual abuse.

5. This action seeks to hold Defendants accountable for their egregious misconduct, to obtain compensatory and punitive damages for the severe injuries and constitutional violations suffered by Plaintiff and Z.J.M., and to ensure that such abuses of power do not recur.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. Sections 1331 and 1343.

7. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367, as these claims arise from a common nucleus of operative facts.

8. Venue is proper in the United States District Court for the Eastern District of Tennessee, Greeneville Division, pursuant to 28 U.S.C. Section 1391(b), as the events giving rise to this Complaint occurred within this judicial district.

9. Plaintiff provided timely notice of claims to all governmental defendants as required by Tenn. Code Ann. Sections 9-8-307 and 29-20-311 (current as of November 2, 2025), including a comprehensive demand letter sent via certified mail on October 9, 2025, detailing all claims and damages.

III. PARTIES

10. Plaintiff JASON SCOTT MOORE (born January 14, 1974) is an adult citizen of the United States and a resident of 1012 Whippoorwill Lane, Kingsport, Sullivan County, Tennessee. He is a retired Military Police officer and a 100% disabled veteran suffering from PTSD. He is the biological father of Z.J.M. and has 50/50 legal and physical custody of Z.J.M. as established by a valid court order.

11. Plaintiff Z.J.M. (born May 2, 2018) is a minor child and a citizen of the United States and a resident of Kingsport, Sullivan

County, Tennessee. He is biracial, of half-Asian and half-Caucasian descent. He is represented in this action by his next friend and father, Jason Scott Moore, who shares 50/50 legal and physical custody of Z.J.M. Z.J.M. has a pre-existing discomfort and distrust of KPD officers, often referring to them as "mommy's boyfriend" due to his mother's relationships with multiple KPD officers. Z.J.M. has independent standing to bring claims in this action through his next friend, Plaintiff Jason Scott Moore, for violations of his own constitutional rights, including his Fourteenth Amendment substantive due process rights to bodily integrity, to be free from state-created danger, and to familial association with his non-offending parent, as well as for the intentional and negligent infliction of emotional distress he has suffered due to his sex/gender as a male child.

12. Defendant CITY OF KINGSPORT, TENNESSEE (the "City") is a municipal corporation organized under the laws of the State of Tennessee. The City is responsible for the policies, customs, practices, and training of its employees, including the Kingsport Police Department and the Kingsport City Schools.

13. Defendant JASON BELLAMY is, upon information and belief, currently the Chief of Police for the Kingsport Police Department, and was formerly Assistant Chief. He is sued in both his individual and official capacities. As Chief of Police, he is responsible for the policies, customs, practices, training, and supervision of KPD officers.

14. Defendant DALE PHIPPS is, upon information and belief, the former Chief of Police for the Kingsport Police Department. He is

sued in both his individual and official capacities. As former Chief of Police, he was responsible for the policies, customs, practices, training, and supervision of KPD officers during the relevant period.

15. Defendant OFFICER LEONARD is, upon information and belief, an officer with the Kingsport Police Department, sued in his individual capacity. His full first name will be ascertained through discovery. He was directly involved in the unlawful entry into Plaintiff's home, the unlawful arrest of Plaintiff, and the use of excessive force against Plaintiff.

16. Defendant OFFICER HAMMONDS is, upon information and belief, an officer with the Kingsport Police Department, sued in his individual capacity. His full first name will be ascertained through discovery. He was directly involved in the unlawful entry into Plaintiff's home and the unlawful arrest of Plaintiff.

17. Defendant OFFICER ZACH CALHOUN is, upon information and belief, an officer with the Kingsport Police Department, sued in his individual and official capacities. He was directly involved in the unlawful entry into Plaintiff's home and the unlawful arrest of Plaintiff. He is currently assigned as the School Resource Officer (SRO) at Abraham Lincoln Elementary School, where Z.J.M. is a student.

18. Defendant OFFICER HALL is, upon information and belief, an officer with the Kingsport Police Department, sued in his individual capacity. His full first name will be ascertained through

discovery. He was directly involved in the unlawful entry into Plaintiff's home and the unlawful arrest of Plaintiff.

19. Defendant CAPTAIN WILLIAM KEVIN CLARE is, upon information and belief, a Captain with the Kingsport Police Department, sued in his individual capacity. He was the lead investigator in the criminal case against Plaintiff and is alleged to have made statements undermining Z.J.M.'s credibility despite overwhelming evidence.

20. Defendant RODNEY BART ROWLETT III is, upon information and belief, the City Attorney for the City of Kingsport, sued in his individual and official capacities. He is responsible for providing legal advice to City departments, including KPD and Kingsport City Schools, and is alleged to have actively participated in the obstruction of justice.

21. Defendant ABBY FORD is, upon information and belief, an investigator with the Kingsport Police Department, sued in her individual capacity. She was the KPD investigator assigned to the molestation allegations concerning Z.J.M. in August 2023 and is alleged to have prematurely concluded the investigation without proper due diligence.

22. Defendant KINGSPORT CITY SCHOOLS ("KCS") is a public school district organized under the laws of the State of Tennessee. KCS is responsible for the policies, customs, practices, and training of its employees, including teachers, counselors, and administrators, particularly regarding mandatory reporting of child abuse.

23. Defendant DR. CHRIS HAMPTON is, upon information and belief, the Superintendent of Kingsport City Schools, sued in his individual and official capacities. As Superintendent, he is responsible for the policies, customs, practices, training, and supervision of KCS employees, including compliance with mandatory reporting laws.

24. Defendant CAROLYN SUZANNE LEWIS is, upon information and belief, a Principal within Kingsport City Schools, sued in her individual capacity. She was the Principal of Palmer Center Preschool in October 2022.

25. Defendant JANA BENEDICT is, upon information and belief, a teacher at Palmer Center Preschool, sued in her individual capacity. She was directly involved in the events of October 24, 2022.

26. Defendant SARAH LOCKETT is, upon information and belief, a teacher at Palmer Center Preschool, sued in her individual capacity. She was directly involved in the events of October 24, 2022, and has provided written statements regarding the incident.

27. Defendant TAMMY WILLIAMS is, upon information and belief, a school counselor at Abraham Lincoln Elementary School, sued in her individual capacity. She was directly involved in the events of September 5, 2023.

28. Defendant SUZANNE ZAHNER is, upon information and belief, a Principal at Abraham Lincoln Elementary School, sued in her individual capacity. She was directly involved in the events of September 2023 and September 2024.

29. Defendant MARIOLOU CAUNAN ZAMORA (born June 15, 1994) is an adult citizen of the United States and a resident of Kingsport, Sullivan County, Tennessee. She is Plaintiff's ex-wife and the mother of Z.J.M. She is sued in her individual capacity for her role in the child abuse of Z.J.M. and her participation in the conspiracy to retaliate against Plaintiff.

30. Defendant FORMER SUPERINTENDENT JEFF MOORHOUSE is, upon information and belief, the former Superintendent of Kingsport City Schools, sued in his individual capacity. He was responsible for KCS policies during the period of the Michelle Carpenter abuse allegations.

31. Defendant HR DIRECTOR JENNIFER GUTHRIE is, upon information and belief, the Human Resources Director for Kingsport City Schools, sued in her individual capacity. She was responsible for KCS HR policies and employee conduct during the period of the Michelle Carpenter abuse allegations.

32. Defendant PRINCIPAL STACY EDWARDS is, upon information and belief, a Principal within Kingsport City Schools, sued in his individual capacity. He was Principal of Andrew Johnson Elementary School during the period of the Michelle Carpenter abuse allegations.

33. Defendant MICHELLE CARPENTER is, upon information and belief, a former pre-K special education teacher for Kingsport City Schools, sued in her individual capacity for her role in prior child abuse allegations.

34. Defendant TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES ("DCS") is an agency of the State of Tennessee responsible for child protective services, foster care, and adoption. DCS is responsible for the policies, customs, practices, and training of its employees, including legal counsel, caseworkers, and supervisors, particularly regarding child abuse investigations, information sharing with non-offending parents, and judicial proceedings.

35. Defendant MICHAEL GILLY is, upon information and belief, the Assistant General Counsel for the Northeast Region of Tennessee DCS, sued in his individual and official capacities. He is alleged to have actively participated in the conspiracy to obstruct justice and suppress evidence in judicial proceedings related to Z.J.M.

36. Defendant CARRIE SEARCY is, upon information and belief, a Senior Associate Counsel for the Tennessee Department of Children's Services, sued in her individual and official capacities. She is alleged to have had direct knowledge of Plaintiff's repeated attempts to obtain records and DCS's long-standing involvement with Defendant Zamora, and to have brought other DCS legal counsel into the matter.

37. Defendant JIM HYCHE is, upon information and belief, the Regional General Counsel for the Northeast Region of Tennessee DCS, sued in his individual and official capacities. He is alleged to have had direct knowledge of Plaintiff's repeated attempts to obtain records and DCS's long-standing involvement with Defendant Zamora, and to have been brought into the matter by Defendant Searcy.

38. Defendant KRISTY TIMMERMAN is, upon information and belief, an MSSW Program Manager for the Tennessee Department of Children's Services, directly beneath the Governor, sued in her individual and official capacities. She is alleged to have had direct knowledge of the systemic failures and to have failed to act to protect Z.J.M.

39. Defendant FREDIA TOOMBS is, upon information and belief, a Case Supervisor for the Tennessee Department of Children's Services, sued in her individual capacity. She is alleged to have been responsible for supervising caseworkers involved in Z.J.M.'s case and to have failed to ensure meaningful intervention or reporting.

40. Defendant CHRISTINA POTTER is, upon information and belief, a Case Supervisor for the Tennessee Department of Children's Services, sued in her individual capacity. She is alleged to have been responsible for supervising caseworkers involved in Z.J.M.'s case, including handling Plaintiff's FOIA request, and to have failed to ensure meaningful intervention or reporting.

41. Defendant TIERRA WARD is, upon information and belief, a Caseworker for the Tennessee Department of Children's Services, sued in her individual capacity. She is alleged to have been involved in Z.J.M.'s case, including the October 2022 incident, and to have failed to act to protect Z.J.M.

42. Defendant KELSEY MCKINNEY is, upon information and belief, a Caseworker for the Tennessee Department of Children's Services, sued in her individual capacity. She is alleged to have been involved in Z.J.M.'s case and to have failed to act to protect Z.J.M.

43. Defendant RACHEL VANSANT is, upon information and belief, a Caseworker for the Tennessee Department of Children's Services, sued in her individual capacity. She is alleged to have been involved in Z.J.M.'s case and to have failed to act to protect Z.J.M.

44. Defendant CHRISTY PIERCE is, upon information and belief, a Caseworker for the Tennessee Department of Children's Services, sued in her individual capacity. She is alleged to have been an early caseworker involved in Z.J.M.'s case and to have failed to act, including failing to examine his back for injuries.

45. Defendant MEGAN SKERRITT is, upon information and belief, a Caseworker for the Tennessee Department of Children's Services, sued in her individual capacity. She is alleged to have been an early caseworker involved in Z.J.M.'s case who initially kept the case open but eventually handed it off.

45. Defendant JOHN DOE OFFICERS 1-5 are currently unknown officers of the Kingsport Police Department who participated in the events described herein. Their true identities will be ascertained through discovery and the Complaint will be amended accordingly.

46. Defendant JANE DOE EMPLOYEES 1-5 are currently unknown employees of Kingsport City Schools, the City of Kingsport, or the Tennessee Department of Children's Services who participated in the events described herein. Their true identities will be ascertained through discovery and the Complaint will be amended accordingly.

## IV. FACTS

### A. Long-Standing DCS Knowledge and Failure to Protect Z.J.M. (December 2020 - Present)

47. Defendant Tennessee Department of Children's Services ("DCS") had an open case concerning Defendant Mariolou Caunan Zamora and her children, including Z.J.M., dating back to at least December 2020. This established long-standing knowledge within DCS of allegations of abuse and neglect involving Z.J.M.'s mother, Defendant Zamora. The nature of these cases consistently involved child abuse, including but not limited to, using a "rainbow stick" or cane, bite and pinch marks, squeezed knuckles, and a severe form of corporal punishment (where the child kneels on the floor, stretches out their arms for an extended period, and the fingers and balls of the feet are struck with objects like a plastic cane, phone, or flip-flop) which is now banned in Defendant Zamora's home country of the Philippines.

48. Throughout this period, DCS offered Defendant Zamora services on more than six occasions, which she consistently refused, claiming that stories of her abusing her children were fabricated. Despite this, DCS allegedly failed to act in any meaningful way to protect Z.J.M., allowing him to remain in dangerous situations.

49. On multiple occasions, Plaintiff Jason Scott Moore reported specific instances of abuse to DCS caseworkers, including Z.J.M. showing up unable to walk or make a fist, or with bruises from a baton (what Z.J.M. called a "rainbow stick") near his spine. Early caseworker Defendant Christy Pierce, despite receiving this information, allegedly failed to even examine Z.J.M.'s back or present this critical evidence in court. Another early caseworker, Defendant Megan Skerritt, initially kept the case open but eventually handed it off after Defendant Zamora repeatedly refused services.

50. Caseworkers involved in Z.J.M.'s case throughout this period included, but were not limited to, Defendants Megan Skerritt, Christy Pierce, Tierra Ward, Kelsey McKinney, and Rachel VanSant. Case Supervisors included Defendants Fredia Toombs and Christina Potter. Despite their knowledge and supervisory responsibilities, these individuals allegedly failed to ensure meaningful intervention or reporting to protect Z.J.M.

51. On or about November 7, 2022, Dr. Andrew Barlowe, the ER physician who diagnosed Z.J.M. with child abuse on October 24, 2022, spoke with a DCS supervisor and law enforcement regarding the incident of October 24, 2022. Despite this direct

communication from a medical professional, DCS allegedly failed to take adequate protective action.

52. Plaintiff repeatedly attempted to obtain records and case information regarding Z.J.M. from DCS. On or about October 18, 2023, Plaintiff emailed Defendant Carrie Searcy, a Senior Associate Counsel for Tennessee DCS, detailing his "struggles ... with getting records and case information regarding [his] son Zaiden" and the long history of DCS involvement. Plaintiff's email specifically referenced Z.J.M.'s handprint injury from October 24, 2022, and earlier instances of abuse, including the "rainbow stick" bruises.

53. In response to Plaintiff's email, Defendant Carrie Searcy (Senior Associate Counsel) replied on October 18, 2023, stating: "Thank you so much for reaching out about the struggles you've had with getting records and case information regarding your son Zaiden. I am including the regional attorney who covers Kingsport, Michael Gilly, on this email along with Jim Hyche who is the Regional General Counsel for the northeast region encompassing Kingsport. Michael and Jim are both fantastic and should be able to help with information you would be entitled to as a non-offending parent."

54. This email exchange confirms that as of October 18, 2023, high-level DCS legal counsel, including Defendants Carrie Searcy, Michael Gilly, and Jim Hyche, were on direct notice of:

a. Plaintiff's identity as a non-offending parent.

b. Plaintiff's repeated struggles to obtain records from DCS.

c. The long history of abuse allegations involving Z.J.M. and Defendant Zamora.

d. DCS's long-standing failure to provide Plaintiff with information he was "entitled to."

e. KCS's alleged failures to report child abuse.

55. Despite this clear knowledge and acknowledgment, DCS, through its various caseworkers, supervisors, and legal counsel, including Defendants Michael Gilly, Carrie Searcy, Jim Hyche, Kristy Timmerman, Fredia Toombs, Christina Potter, Tierra Ward, Kelsey McKinney, and Rachel VanSant, allegedly continued to fail to act meaningfully to protect Z.J.M. or to provide Plaintiff with the information necessary to protect his child.

56. Specifically, after Plaintiff's criminal charge for "filing a false report" in June 2024 (a charge that is scheduled for dismissal), DCS allegedly refused to share records with Plaintiff, stating that he was now the "alleged perp," despite DCS's long-standing knowledge of Defendant Zamora's documented history of abuse and the baseless nature of the charge against Plaintiff. This refusal was a deliberate act to obstruct Plaintiff's efforts to protect Z.J.M.

57. Defendant Kristy Timmerman, an MSSW Program Manager for DCS directly beneath the Governor, is also alleged to have been involved in and aware of the systemic failures within DCS concerning Z.J.M.'s case and to have failed to act to protect him.

58. DCS's long-standing knowledge of Defendant Zamora's history, combined with its alleged failure to act meaningfully and

its active obstruction of Plaintiff's efforts, constitutes a custom and practice of deliberate indifference to child protection and a willingness to collaborate in suppressing evidence related to child abuse.

59. The Tennessee Department of Children's Services (DCS) is currently involved in a class-action lawsuit alleging systemic failures in its operations. On or about January 26, 2022, a highly critical audit released by the Tennessee Comptroller's office warned that DCS should reevaluate strategic planning "to address the root cause of and fix systemic issues that have plagued DCS for years." The audit found that DCS has "a failing case management system" and is "struggling to support the state's most vulnerable children and youth." It further noted that DCS is significantly short-staffed, with high turnover, and that "the safety, permanency and well-being of Tennessee's most vulnerable children is in jeopardy by (DCS) management's failure," citing five main failings, including "inadequate responses to abuse and neglect allegations outside of and within the system." State Representative David Hawk (R-Greeneville) commented that DCS "has largely been like a dog chasing its tail going in circles" and that the problem has "worsened considerably since the COVID-19 pandemic," placing "thousands of children at great risk." General Sessions and Juvenile Judge Kenneth Bailey (Greeneville) corroborated these concerns, citing instances of children being "further traumatized" by DCS's inability to find placements. These officially documented and publicly acknowledged systemic failures within DCS provide further context and corroboration for DCS's long-standing inaction regarding Z.J.M., its failure to protect him, its refusal to provide records, and its alleged obstruction of justice in Plaintiff's custody

case. Z.J.M.'s experience is a direct manifestation of the systemic issues identified in the Comptroller's audit.

B. The Initial Abuse and Systemic Failure to Report (October 2022)

60. On October 24, 2022, Z.J.M., then four years old, attended Palmer Center Preschool, a Kingsport City School.

61. Z.J.M. arrived at school with a visible handprint across his temple and septum, and was acting out.

62. When asked by his teachers, Defendants Jana Benedict and Sarah Lockett, what happened, Z.J.M. disclosed that his mother, Defendant Mariolou Caunan Zamora, had struck him from behind because he was running in the house, and she did not apologize when he woke up.

63. Later that day, Plaintiff Jason Scott Moore arrived to pick up Z.J.M. from school. Defendants Benedict and Lockett met Plaintiff at the door and shared Z.J.M.'s disclosure. Plaintiff then observed the distinct handprint on Z.J.M.'s face.

64. Plaintiff inquired if the teachers had reported the suspected child abuse to law enforcement or DCS. Defendants Benedict and Lockett informed Plaintiff that they were not "allowed to," stating that City Attorney Defendant Rodney Barton Rowlett III deemed such matters "civil."

65. Plaintiff advised the teachers that, per Tennessee law, they were mandated reporters and required to report even the suspicion of child abuse (Tenn. Code Ann. Section 37-1-403, as amended up to November 1, 2025). Plaintiff instructed them to report to DCS, stating that he would contact the police.

66. Plaintiff immediately contacted the Kingsport Police Department. Officer Blevins was dispatched to Plaintiff's home, where Z.J.M. recounted the abuse and displayed the mark on his face. Officer Blevins took a photograph of the injury.

67. When DCS failed to contact Plaintiff for several days, Plaintiff filed a separate report with DCS. Caseworker Defendant Tierra Ward was allegedly involved in Z.J.M.'s case at this time.

68. Plaintiff then sought medical attention for Z.J.M. at an emergency room. Dr. Andrew Barlowe, an attending physician at Indian Path Hospital, diagnosed Z.J.M. with child abuse and noted in the medical records that he would be contacting DCS and the police, and strongly recommended that Z.J.M. should never be around his mother unsupervised.

69. Defendant Mariolou Caunan Zamora has a documented history of abuse cases with DCS dating back to January 2020. DCS offered her services on more than six occasions, which she consistently refused, claiming that stories of her abusing her children were fabricated.

70. Between January 2022 and November 2023, the Kingsport Police Department was called to Defendant Zamora's residence more than ten times.

71. Despite overwhelming evidence of abuse, including Z.J.M.'s disclosure, visible injury, medical diagnosis by Dr. Andrew Barlowe, CAC interview, and the Virginia Protective Order, Kingsport City Schools, through its employees Defendants Benedict, Lockett, and Principal Carolyn Suzanne Lewis, failed to make a mandated report of child abuse in October 2022. This failure was later admitted by Defendant Dr. Chris Hampton.

C. Continued Abuse, School Failure, and Police Inaction (September 2023 - Present)

72. In September 2023, Z.J.M. was attending Abraham Lincoln Elementary School for kindergarten.

73. On September 5, 2023, school counselor Defendant Tammy Williams contacted Plaintiff to advise that Z.J.M. had disclosed abuse by both his uncle and his mother, Defendant Zamora.

74. During this period, when Z.J.M. attempted to speak with Defendant Tammy Williams about his problems, she actively discouraged him from disclosing abuse, stating to Z.J.M. while placing a sucker in his mouth and leading him out of her office, "I don't want to hear what your daddy wants you to say." This statement was an attempt to silence Z.J.M. and obstruct the reporting of child abuse.

75. Defendant Williams, echoing the previous sentiment, informed Plaintiff that City Attorney Defendant Rodney Barton Rowlett III stated it was a "civil matter" and the school could not be involved.

76. Plaintiff, deeply concerned by the continued inaction, escalated the matter by attempting to speak with Principal Defendant Suzanne Zahner. Defendant Zahner exhibited the same dismissive attitude as Defendant Williams.

77. Plaintiff then went over their heads, emailing Kingsport City School Board members and Superintendent Defendant Dr. Chris Hampton for several weeks.

78. Finally, on October 17, 2023, a report was made to authorities, a delay of 42 days from Z.J.M.'s initial disclosure to Defendant Williams.

79. Plaintiff subsequently requested records from the October 24, 2022 incident and discovered that Kingsport City Schools had never made a report of suspected abuse at that time.

80. On or around September 25, 2024, after Plaintiff confronted Principal Defendant Suzanne Zahner about the school's non-reporting, Defendant Zahner filed a police report against Plaintiff. This action was a retaliatory response to Plaintiff's protected speech and advocacy for his child.

81. Z.J.M.'s 2nd grade teacher, aware of the past incidents with Defendant Williams and Principal Zahner, has explicitly stated that if Z.J.M. makes any disclosures, she will report them without asking for permission, directly challenging the "civil matter" directive.

82. DCS continued to have an open case on Defendant Zamora throughout this period but refused to share any records with Plaintiff, impeding his efforts to protect Z.J.M. Caseworkers involved included Defendants Kelsey McKinney and Rachel VanSant.

83. In November 2023, Plaintiff met with Kingsport Police Department officials regarding Z.J.M.'s case. Defendant Captain William Kevin Clare informed Plaintiff that KPD believed Z.J.M. was a "liar" and was being "coached" by Defendant Johnny White (Defendant Zamora's then-husband).

84. This statement by Defendant Captain Clare was made despite Z.J.M.'s having undergone a Child Advocacy Center (CAC) interview where he disclosed physical abuse by his mother and sexual molestation by his aunt. CAC interviews are specifically designed to avoid coaching and elicit truthful, unprompted disclosures.

85. Kingsport Police Department took no action regarding the molestation allegations, despite Z.J.M.'s disclosures in the CAC interview. KPD also failed to provide Plaintiff with a copy of the CAC interview conducted by their own officer.

86. Plaintiff was forced to pursue legal action in Virginia against the aunt, where a 2-year Order of Protection was granted on Z.J.M.'s behalf (Scott County, Virginia, Case No. J-1345-22), further corroborating the abuse allegations.

86A. In August 2023, following a report of sexual molestation against Z.J.M. by his aunt, KPD Detective Abby Ford was assigned to investigate. Despite Z.J.M. undergoing a Child Advocacy Center (CAC) interview, which is specifically designed to elicit truthful, unprompted disclosures and avoid coaching, Detective Ford deliberately halted her investigation. She cited a baseless belief that Z.J.M. was being 'coached,' ignoring the professional standards of CAC interviews and the gravity of the allegations.

86B. Detective Ford closed the sexual abuse investigation without even interviewing the individual who reported the sexual abuse, demonstrating a profound lack of due diligence and a deliberate indifference to Z.J.M.'s safety. This failure to adequately investigate further evidences a pattern of protecting alleged abusers and dismissing credible child abuse reports within KPD.

86C. This deliberate inaction by Detective Ford occurred despite strong corroborating evidence. In December 2023, a Virginia Magistrate, faced with Z.J.M.'s own testimony stating, 'I tell her it hurts and to stop but she won't stop,' imposed a two-year Order of Protection on Z.J.M.'s behalf against the aunt (Scott County, Virginia, Case No. J-1345-22), directly contradicting Detective Ford's 'coaching' theory and underscoring the validity of Z.J.M.'s claims.

86D. This dismissal of Z.J.M.'s credible allegations of sexual abuse by Detective Ford was motivated, upon information and belief, by class-based animus against Z.J.M. as a male child victim of sexual abuse. There is a documented disparity in how law enforcement and child protective services respond to allegations of sexual abuse depending on the victim's gender, with male victims often facing greater skepticism and less vigorous investigation. If Z.J.M. had been a female child, the investigation would have been pursued with greater diligence, and the offending party would have likely faced prosecution.

86E. Further evidencing the systemic failures and deliberate indifference, around August 8, 2022, DCS Caseworker Defendant Kelsey McKinney interviewed Z.J.M. in private on the front porch. During this interview, Z.J.M. clearly identified his private parts and disclosed that his aunt was touching him 'skin to skin all the time' and also 'bites on it and pulls it and makes it hurt.'

86F. Upon being confronted with this explicit disclosure by Plaintiff, Defendant Kelsey McKinney dismissively stated, 'Oh, he is four. Children do not begin to form memories until after the age of five.' This statement demonstrates a shocking level of incompetence, a deliberate disregard for established child development science regarding memory and disclosure, and a clear intent to ignore credible allegations of child sexual abuse, thereby actively undermining efforts to protect Z.J.M.

D. Police Misconduct, Conflict of Interest, and Retaliation (2022-Present)

87. Upon information and belief, Defendant Officer Leonard began an extramarital affair with Defendant Mariolou Caunan Zamora in or around August 2022.

88. In August 2022, Defendant Officer Leonard pulled over Defendant Zamora for driving without a license or insurance. Despite these offenses, Defendant Leonard released her without citation, stating that he did not want her to get in trouble with DCS. This demonstrates a clear abuse of power and conflict of interest by Defendant Leonard to protect his romantic interest.

89. In December 2022, Defendant Officer Leonard charged Defendant Johnny White (Defendant Zamora's then-husband) with aggravated stalking. This action, following the affair and Defendant White's discovery of molestation, appears to be a retaliatory act by Defendant Leonard to remove Defendant White from the picture.

90. In October 2023, Plaintiff, having grown weary of KPD's inaction and apparent protection of Defendant Zamora, filed a formal complaint against three KPD officers, including Defendant Officer Leonard, for their failure to investigate and act on the child abuse reports.

91. In the months following Plaintiff's complaint, KPD, under the leadership of then-Chief Defendant Dale Phipps and then-Assistant Chief Defendant Jason Bellamy, and with the involvement of Captain Defendant Clare, began to actively build a retaliatory case against Plaintiff.

E. The Conspiracy to Silence and Unlawful Entry (June 8, 2024)

92. On June 8, 2024, a meeting took place at Two Dad's Cafe in Kingsport, Tennessee.

93. Attendees at this meeting included, but were not limited to, Judge Jim Goodwin, Senator Jon Lundberg, Mayor Paul Montgomery, and County Commissioner Daniel Horne (a former KPD officer who resigned amid scandal). This meeting is currently under investigation by the FBI for alleged Open Meetings Act violations.

94. The owners of Two Dad's Cafe, Chuck and Randy, confirmed that this meeting was specifically about "silencing" Plaintiff Jason Scott Moore.

95. Plaintiff maintains two working surveillance cameras on his front porch, both of which were functioning properly prior to June 8, 2024. Upon the arrival of the Defendant Officers on Plaintiff's property on June 8, 2024, the camera positioned in the location most visible to approaching officers immediately ceased functioning. Plaintiff possesses no direct evidence of the mechanism by which the camera was disabled, but the precise timing of its malfunction—occurring simultaneously with the officers' arrival and immediately before their unlawful entry—coupled with their subsequent brazen dialogue indicating a belief they were unobserved, creates a strong inference of intentional interference with Plaintiff's surveillance system to avoid complete documentation of their unlawful actions.

96. Later that same day, June 8, 2024, five Kingsport Police Department officers, including Defendant Officer Leonard, Defendant Officer Hammonds, Defendant Officer Zach Calhoun, and Defendant Officer Hall, unlawfully entered Plaintiff's home at 1012 Whippoorwill Lane, Kingsport, TN, while he was not present.

97. The unlawful entry was captured on video surveillance from Plaintiff's remaining functioning camera. The video shows Defendant Officer Hammonds asking Defendant Officer Leonard if it was the correct address, to which Defendant Leonard replied, "That motherfucker lives right here."

98. The video further shows one officer asking, "Is there a gag order?" and Defendant Officer Leonard responding, "No, but there can be," before the officers entered Plaintiff's home with guns drawn, remaining inside for more than five minutes.

99. This entry was conducted without a warrant, without Plaintiff's consent, and in the absence of any exigent circumstances, constituting a clear violation of Plaintiff's Fourth Amendment rights. The officers' statements on video and the interference with surveillance equipment demonstrate personal animus and consciousness of wrongdoing, directly linking the high-level meeting to the subsequent police action. The right to be free from warrantless home entries absent consent or exigent circumstances was clearly established by Payton v. New York, 445 U.S. 573 (1980) [Status: Good Law as of November 1, 2025]. No reasonable officer could have believed that this entry was lawful.

F. Unlawful Arrest, Excessive Force, and Malicious Prosecution (June 10, 2024)

100. On or about June 10, 2024, Plaintiff Jason Scott Moore, upon receiving a call from Defendant Captain William Kevin Clare stating there was an "update on the case," willingly went to the Kingsport Police Department to speak with Defendant Captain Clare. This interaction was filmed in an interrogation room.

101. During this filmed interaction, Defendant Captain Clare, rather than providing an update, threatened Plaintiff, stating that if Plaintiff did not cooperate with Defendant Clare's theory that Z.J.M. was being "coached" by Defendant Johnny White (despite Defendant White having no access to Z.J.M.), Defendant Clare would "indict me for wasting police resources." This statement, captured on video, demonstrates Defendant Clare's improper motive, lack of probable cause, and retaliatory intent.

102. Despite Plaintiff's willing cooperation and presence at the police station, and despite the fact that Plaintiff is a non-violent, non-flight-risk individual with no criminal record, KPD chose not to issue a summons or arrange for a voluntary surrender. Instead, just two days later, on June 10, 2024, Kingsport Police Department officers, including Defendant Officer Leonard, Defendant Officer Hammonds, Defendant Officer Zach Calhoun, and Defendant Officer Hall, returned to Plaintiff's home and arrested him.

103. This deliberate choice of a public, aggressive arrest involving five officers in Plaintiff's suburban neighborhood, rather than a

professional arrangement for surrender, was calculated to intimidate, humiliate, and punish Plaintiff for his protected speech and his refusal to cooperate with Defendant Clare's baseless "coaching" narrative. This action, following the filmed threat, further evidences the malicious and retaliatory nature of the prosecution.

104. Plaintiff, a 51-year-old retired Military Police officer with a 100% disability for PTSD and no criminal record, was arrested in broad daylight in his suburban neighborhood.

105. During the arrest, Defendant Officer Leonard used excessive force, breaking Plaintiff's left wrist and hyperextended left knee, requiring extensive medical treatment and physical therapy for six months. Plaintiff has medical documentation of these injuries. No reasonable officer could have believed that using force sufficient to break the wrist and hyperextend the knee of a 51-year-old, compliant, non-violent, disabled veteran with no criminal history was objectively reasonable under the circumstances, in clear violation of the Fourth Amendment as established by Graham v. Connor, 490 U.S. 386 (1989) [Status: Good Law as of November 1, 2025].

106. The arresting officers failed to show Plaintiff an arrest warrant and failed to read him his Miranda rights.

107. The charge against Plaintiff was "filing a false report of child abuse" related to the October 24, 2022 incident.

108. Prior to arresting Plaintiff, KPD failed to conduct a thorough and impartial investigation, deliberately ignoring readily available, exculpatory, and highly relevant information that would have undermined any probable cause to believe Plaintiff's report was false. Specifically:

a. KPD knew there was an active DCS case involving Defendant Mariolou Caunan Zamora. KPD failed to consult the over 300 pages of DCS records (from January 2022 to December 2023) which contained an admission from Defendant Zamora (dated on or about October 24, 2022) that Z.J.M. was "hit" and "ran into her hand and fell into the floor," an admission that directly contradicted the idea that Plaintiff's report was "false."

b. KPD failed to interview Dr. Andrew Barlowe, the ER physician who diagnosed Z.J.M. with child abuse on October 24, 2022, thereby deliberately ignoring expert medical evidence corroborating Plaintiff's report.

c. KPD failed to provide Plaintiff with a copy of the Child Advocacy Center (CAC) interview of Z.J.M. conducted by their own officer, Kellen Steele, in November 2022, which would have provided direct evidence from Z.J.M. himself. This constitutes suppression of exculpatory evidence.

109. Plaintiff was taken to the station, fingerprinted, and had his mugshot taken.

110. While Plaintiff was in custody, Defendant Officer Leonard met Defendant Zamora and Z.J.M. at the police station, placed a police badge sticker on Z.J.M., and gave him a red slap bracelet.

111. Defendant Officer Leonard and/or Defendant Zamora falsely told Z.J.M. that Plaintiff had been "killed in a car wreck."

112. Upon Plaintiff's release from jail, Defendant Zamora refused to allow Plaintiff his weekly visitation with Z.J.M., claiming that KPD officers stated they no longer enforced court orders.

113. After intervention by Plaintiff's attorney, KPD eventually enforced the court order, and Plaintiff picked up Z.J.M., who stated, "They said you died in a car wreck. I haven't eaten. Can we get pancakes?" This incident caused severe emotional distress to Z.J.M. and Plaintiff.

114. The criminal charge against Plaintiff was baseless. The report of child abuse was substantiated by Z.J.M.'s disclosure, visible injuries, medical diagnosis by Dr. Andrew Barlowe, CAC interview, and the Virginia Protective Order. Plaintiff's report was made in good faith and based on credible evidence.

115. The District Attorney's office, upon reviewing the evidence, has agreed to dismiss the criminal charge against Plaintiff on January 16, 2026. This dismissal constitutes a termination of the proceeding in Plaintiff's favor, strengthening the malicious prosecution claim.

G. Kingsport Police Department's Pattern and Practice of First Amendment Retaliation

116. The Kingsport Police Department, under the leadership of Defendants Chief Dale Phipps and Chief Jason Bellamy, has a documented pattern and practice of retaliating against citizens

who criticize their behavior or expose misconduct, in violation of the First Amendment.

117. This pattern is detailed in a federal lawsuit, Gibbons v. City of Kingsport, Tennessee, et al., Case No. 2:2023cv00138 (E.D. Tenn.), filed in July 2023. The Gibbons Complaint alleges that on October 18, 2022, KPD officers, including Defendants Dale Phipps and Jason Bellamy, conducted a pre-dawn raid and arrested Joshua Gibbons for insulting a police officer in a 62-second video and repeatedly filming them and exposing their misconduct on his YouTube channel.

118. The Gibbons Complaint states that KPD's retaliatory actions were made "with the blessing of its senior leadership" and were a "deliberate choice by Chief Phipps and numerous other officers in the chain of command to send Gibbons a message: Stop filming us and shut up." It further alleges that Defendants Chief Phipps and Deputy Chief Bellamy, "deliberately indifferent to Gibbons's rights, sanctioned Kingsport police's unlawful arrest and jailing of Gibbons."

119. The Gibbons Complaint states that KPD "ignored state law prohibiting arrests for minor traffic offenses, and disregarded well-established law that verbal criticism of police officers is an American tradition, not a crime," and used "bogus criminal charges and heavy-handed tactics to criminalize speech—or speakers—they don't like." The defendants in the Gibbons case include the City of Kingsport, Tennessee, Dale Phipps, Jason Bellamy, Daniel Horne, Robert Mills, Darell Johnson, Martin Taylor, and Sean Chambers.

120. The KPD's conduct in the Gibbons case, involving a retaliatory arrest for constitutionally protected expression and approved by top brass, demonstrates a clear pattern and custom of violating citizens' First Amendment rights, directly parallel to the retaliatory arrest and prosecution of Plaintiff Jason Scott Moore for his protected activity of reporting child abuse and filing complaints against KPD officers.

H. Ongoing Retaliation and Harassment (October 2025 - Present)

121. Following Plaintiff's submission of preservation letters and Tennessee Public Records Act (TPRA) requests to the City of Kingsport, KPD, and KCS, and a formal complaint to the Board of Professional Responsibility against City Attorney Defendant Rodney Barton Rowlett III, the Defendants have engaged in further acts of retaliation and harassment.

122. Increased KPD Patrol Presence: Beginning on or around October 21, 2025, Plaintiff observed a dramatic and highly unusual increase in Kingsport Police Department patrol presence in his residential neighborhood (1012 Whippoorwill Lane). Whereas prior presence was minimal, Plaintiff observed multiple different KPD squad cars slowly patrolling his street within a short timeframe, creating an intimidating and harassing atmosphere.

123. Targeted SRO Assignment: In a clear act of overt retaliation, Defendant Officer Zach Calhoun, who participated in Plaintiff's unlawful arrest on June 10, 2024, has been assigned as the School Resource Officer (SRO) at Abraham Lincoln Elementary School, where Z.J.M. is a student.

a. Prior to these retaliatory actions, an SRO was typically only present at school arrival and dismissal on the first day of school. Defendant Officer Calhoun has been stationed at the school for over a week, present during both morning drop-off and afternoon pickup, and throughout the school day.

b. This assignment forces Plaintiff to encounter an officer involved in his unlawful arrest twice daily, creating continuous intimidation and harassment for both Plaintiff and Z.J.M.

c. This assignment is particularly egregious given Z.J.M.'s pre-existing discomfort and distrust of KPD officers, often referring to them as "mommy's boyfriend" due to his mother's relationships with multiple KPD officers. Defendant Officer Calhoun's presence exploits Z.J.M.'s known vulnerabilities, causing him significant psychological distress and interfering with his right to a safe educational environment.

I. Kingsport City Schools' Pattern and Practice of Failure to Report

124. Kingsport City Schools has a documented history of systemic failures to report child abuse, demonstrating a custom, policy, and practice of deliberate indifference to its mandatory reporting obligations under Tennessee law.

125. In a prior, highly publicized case, Kingsport City Schools was sued after a pre-K special education teacher, Defendant Michelle Carpenter, abused multiple special needs children between August 2021 and March 2022.

126. KCS had suspended Defendant Michelle Carpenter twice (in 2020 and 2022) for alleged mistreatment of students but failed to

report the allegations to authorities in 2020 and delayed reporting the 2022 issue for nearly two weeks.

127. A Sullivan County Grand Jury indicted Defendant Michelle Carpenter on 20 felony counts of child abuse and issued a scathing report excoriating KCS for its "egregious" handling of the case.

128. Former Superintendent Defendant Jeff Moorhouse, HR Director Defendant Jennifer Guthrie, and Principal Defendant Stacy Edwards were named as individual defendants in a federal lawsuit, which alleged violations of the Fourteenth Amendment, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act, for enabling Carpenter's conduct, engaging in "mistruths and obfuscation," and delaying/obstructing reporting.

129. Second Judicial District Attorney General Barry Staubus explicitly warned KCS officials, including then-Superintendent Defendant Jeff Moorhouse, about their failure to report suspected child abuse directly to DCS and law enforcement.

130. This federal lawsuit against KCS and its officials regarding Defendant Michelle Carpenter recently settled for $280,000, confirming the school system's liability for its pattern of failing to protect children and report abuse.

131. KCS's failures in Z.J.M.'s case (October 2022 and September 2023) are not isolated incidents but rather a continuation of this established pattern and practice of deliberate indifference,

actively encouraged by City Attorney Defendant Rodney Barton Rowlett III's erroneous advice that child abuse is a "civil matter," and compounded by the actions of Defendants Williams and Zahner.

132. Z.J.M.'s 2nd grade teacher, aware of the past incidents with Defendant Williams and Principal Zahner, has explicitly stated that if Z.J.M. makes any disclosures, she will report them without asking for permission, directly challenging the "civil matter" directive and highlighting KCS's systemic failures.

J. Coordinated Obstruction of Justice in Custody Proceedings

133. On or about October 27, 2023, Plaintiff Jason Scott Moore had properly served subpoenas for testimony and records on KCS teachers and administrators, and on DCS caseworkers and for DCS records, for a hearing in Plaintiff's custody case concerning Z.J.M. The purpose of this testimony and these records was to present crucial evidence of Z.J.M.'s abuse and the systemic failures of KCS and DCS to report and act.

134. Upon information and belief, Defendant City Attorney Rodney Bart Rowlett III filed a motion to quash KCS subpoenas. Simultaneously, Defendant Michael Gilly, Assistant General Counsel for the Northeast Region of Tennessee DCS, actively refused to allow DCS personnel to testify and actively refused to produce DCS records to the court at that same hearing, despite valid subpoenas.

135. After Plaintiff fought for the records to be released, Defendant Michael Gilly eventually agreed to allow the court to have the DCS records (over 300 pages from January 2022 to December 2023) where attorneys could review them in the supervision of the judge's office, but explicitly prohibited any pictures or copies from being taken. This partial and restrictive release of records, after initial refusal, demonstrates a continued pattern of obstruction.

136. This alleged coordination between Defendant Rowlett and Defendant Gilly, aimed at suppressing critical evidence of child abuse and mandatory reporting failures from reaching the court, constitutes a deliberate and concerted obstruction of justice and interference with the judicial process.

137. This alleged coordination and suppression of evidence directly undermined Plaintiff's ability to protect Z.J.M. through the judicial system and further evidenced the conspiracy to silence Plaintiff and protect KCS and DCS from accountability.

K. Attempts at Pre-Litigation Resolution and Continued Retaliation

138. On or about October 9, 2025, Plaintiff Jason Scott Moore, through certified mail, sent a comprehensive demand letter to the City of Kingsport, Kingsport Police Department, Kingsport City Schools, and the Tennessee Department of Children's Services, detailing the constitutional violations and state law torts suffered by Plaintiff and Z.J.M., and demanding monetary compensation of $5,000,000, along with specific measures for apology and accountability.

139. The demand letter provided a deadline of November 6, 2025, for a substantive response and good faith engagement in settlement discussions.

140. Despite the gravity of the allegations, the detailed evidence presented, and the significant monetary demand, the Defendants have completely ignored Plaintiff's demand letter and have made no attempt to engage in pre-litigation resolution. This refusal to respond further demonstrates Defendants' deliberate indifference to the constitutional rights of Plaintiff and Z.J.M., and their ongoing pattern of retaliation against Plaintiff for seeking redress of grievances.

L. Damages Suffered by Plaintiff and Z.J.M.

141. As a direct and proximate result of the Defendants' actions and inactions, Plaintiff Jason Scott Moore has suffered severe physical injuries (broken left wrist and badly bruised hyperextended left knee), requiring extensive medical treatment and six months of physical therapy. Medical documentation of these injuries exists.

142. Plaintiff has also suffered severe emotional distress, including depression, suicidal ideation, agoraphobia, and an exacerbation of his PTSD, requiring ongoing mental health treatment.

143. Plaintiff has incurred substantial financial damages, including over $14,000 in legal fees for his criminal defense, medical expenses, and lost wages.

144. Plaintiff's reputation has been severely damaged, and he has suffered social stigma within his community. His long-distance relationship ended due to travel restrictions and the stress of the criminal charge.

145. Z.J.M. has suffered ongoing physical and emotional abuse, trauma from witnessing and being subjected to his mother's violence, the emotional distress of being told his father had died, and now faces continuous intimidation and harassment in his school environment due to the retaliatory SRO assignment. Z.J.M. requires ongoing therapy and counseling, estimated at $10,000 to date, and projected future costs of $50,000.

146. Both Plaintiff and Z.J.M. have been denied the full protection of the law and suffered direct harm due to the Defendants' deliberate indifference and retaliatory actions.

## V. CLAIMS FOR RELIEF

### COUNT I: 42 U.S.C. § 1983 - Violation of Fourth Amendment (Unlawful Entry) - Plaintiff

147. Plaintiff incorporates by reference all preceding paragraphs.

148. The Fourth Amendment protects individuals from unreasonable searches and seizures, including warrantless entries into their homes.

149. Defendants Officer Leonard, Officer Hammonds, Officer Zach Calhoun, Officer Hall, and John Doe Officers 1-5 unlawfully entered Plaintiff's home on June 8, 2024, without a warrant, without consent, and in the absence of any exigent circumstances.

150. This entry was conducted in clear violation of Plaintiff's Fourth Amendment rights. The right to be free from such warrantless home entries was clearly established by Payton v. New York, 445 U.S. 573 (1980) [Status: Good Law as of November 1, 2025]. No reasonable officer could have believed that this entry was lawful, especially given their recorded dialogue.

151. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages as described herein.

COUNT II: 42 U.S.C. § 1983 - Violation of Fourth Amendment (Unlawful Arrest) - Plaintiff

152. Plaintiff incorporates by reference all preceding paragraphs.

153. The Fourth Amendment protects individuals from arrest without probable cause.

154. Defendants Officer Leonard, Officer Hammonds, Officer Zach Calhoun, Officer Hall, Captain William Kevin Clare, and John Doe

Officers 1-5 arrested Plaintiff on June 10, 2024, without probable cause to believe he had committed a crime.

155. KPD's investigation deliberately ignored readily available exculpatory evidence, and the arrest was baseless. A reasonable officer would have known that a medical diagnosis of child abuse, visible injuries, and the child's own statements established the report's validity, making arrest for 'false reporting' objectively unreasonable.

156. This arrest was conducted in clear violation of Plaintiff's Fourth Amendment rights. The right to be free from arrest without probable cause was clearly established by numerous Supreme Court and Sixth Circuit precedents. No reasonable officer could have believed that arresting Plaintiff under these circumstances, given the exculpatory evidence and Captain Clare's prior threat, was lawful.

157. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages as described herein.

COUNT III: 42 U.S.C. § 1983 - Violation of Fourth Amendment (Excessive Force) - Plaintiff

158. Plaintiff incorporates by reference all preceding paragraphs.

159. The Fourth Amendment prohibits the use of excessive force by law enforcement officers during an arrest.

160. Defendant Officer Leonard used excessive force against Plaintiff during his June 10, 2024 arrest, breaking Plaintiff's left wrist and hyperextending his left knee.

161. Plaintiff was a 51-year-old, compliant, non-violent, disabled veteran with no criminal history. The force used was objectively unreasonable given the circumstances.

162. This use of force was conducted in clear violation of Plaintiff's Fourth Amendment rights. The right to be free from excessive force during arrest was clearly established by Graham v. Connor, 490 U.S. 386 (1989) [Status: Good Law as of November 1, 2025]. No reasonable officer could have believed that using force sufficient to break the wrist and hyperextend the knee of a compliant, non-violent, disabled veteran was objectively reasonable.

163. As a direct and proximate result of Defendant Officer Leonard's actions, Plaintiff suffered damages as described herein.

COUNT IV: 42 U.S.C. § 1983 - Violation of First Amendment (Retaliation) - Plaintiff

164. Plaintiff incorporates by reference all preceding paragraphs.

165. The First Amendment protects a citizen's right to free speech, including the right to report child abuse, criticize government officials, and seek redress of grievances.

166. Plaintiff engaged in constitutionally protected activities by reporting child abuse, filing complaints against KPD officers, and advocating for Z.J.M.'s safety.

167. Defendants, including Chiefs Jason Bellamy, Dale Phipps, Captain William Kevin Clare, Detective Abby Ford, Officer Zach Calhoun, Officer Leonard, Officer Hammonds, Officer Hall, Rodney Bart Rowlett III, Dr. Chris Hampton, Carolyn Suzanne Lewis, Jana Benedict, Sarah Lockett, Tammy Williams, Suzanne Zahner, Michael Gilly, Carrie Searcy, Jim Hyche, Kristy Timmerman, Fredia Toombs, Christina Potter, Tierra Ward, Kelsey McKinney, Rachel VanSant, Christy Pierce, Megan Skerritt, and John/Jane Doe Defendants, retaliated against Plaintiff for exercising his First Amendment rights.

168. The retaliatory actions include, but are not limited to: orchestrating the June 8, 2024 meeting to "silence" Plaintiff, the unlawful entry into Plaintiff's home, the unlawful arrest, the baseless criminal prosecution, the increased KPD patrol presence near Plaintiff's home, and the targeted SRO assignment of Officer Zach Calhoun to Z.J.M.'s school.

169. This retaliation was motivated by Plaintiff's protected speech and caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in such speech.

170. This conduct was in clear violation of Plaintiff's First Amendment rights. The right to be free from government retaliation for exercising protected speech was clearly established at the time of the violations. No reasonable official could have

believed that retaliating against a citizen for reporting child abuse or criticizing police conduct was lawful.

171. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages as described herein.

COUNT V: 42 U.S.C. § 1983 - Violation of Fourteenth Amendment (Malicious Prosecution) - Plaintiff

172. Plaintiff incorporates by reference all preceding paragraphs.

173. The Fourteenth Amendment protects individuals from malicious prosecution that results in a deprivation of liberty.

174. Defendants Captain William Kevin Clare, Officer Leonard, Officer Hammonds, Officer Zach Calhoun, Officer Hall, and John Doe Officers 1-5 initiated and continued a criminal prosecution against Plaintiff for "filing a false report of child abuse" without probable cause.

175. The prosecution was initiated with malice, as evidenced by Captain Clare's threat to "indict me for wasting police resources" and the deliberate disregard of exculpatory evidence.

176. The criminal proceeding was terminated in Plaintiff's favor on January 16, 2026, with the dismissal of all charges.

177. This malicious prosecution deprived Plaintiff of his liberty and caused him damages.

178. This conduct was in clear violation of Plaintiff's Fourteenth Amendment rights. The right to be free from malicious prosecution, particularly where there is a lack of probable cause and evidence of malice, was clearly established at the time of the violations.

179. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages as described herein.

COUNT VI: 42 U.S.C. § 1983 - Violation of Fourteenth Amendment (Substantive Due Process - Familial Association) - Z.J.M.

180. Plaintiff Z.J.M. incorporates by reference all preceding paragraphs.

181. Z.J.M. has an independent Fourteenth Amendment substantive due process right to familial association and to maintain his relationship with his fit parent, free from unwarranted state interference.

182. Defendants' actions, including the unlawful arrest and prosecution of Plaintiff, the false statement to Z.J.M. that his father had died, the denial of visitation, and the retaliatory SRO assignment, directly and intentionally interfered with Z.J.M.'s fundamental right to familial association with Plaintiff.

183. This interference was arbitrary, conscience-shocking, and not justified by any legitimate state interest.

184. This conduct was in clear violation of Z.J.M.'s Fourteenth Amendment rights. The right of a child to familial association with a fit parent was clearly established at the time of the violations.

185. As a direct and proximate result of Defendants' actions, Z.J.M. suffered damages as described herein.

COUNT VII: 42 U.S.C. § 1983 - Violation of Fourteenth Amendment (Substantive Due Process - State-Created Danger) - Z.J.M.

186. Plaintiff Z.J.M. incorporates by reference all preceding paragraphs.

187. The Fourteenth Amendment protects individuals from state actors who create or enhance a danger to them.

188. Defendants, through their actions and inactions, created or substantially increased the danger of harm to Z.J.M. by:

a. Protecting an alleged child abuser (Defendant Zamora) despite long-standing evidence of abuse;

b. Actively obstructing Plaintiff's efforts to protect Z.J.M.;

c. Failing to report child abuse as mandated by law;

d. Assigning Officer Zach Calhoun, an officer involved in Plaintiff's unlawful arrest, as SRO at Z.J.M.'s school, knowing Z.J.M.'s distrust of KPD officers and thereby placing him in a position of increased psychological harm.

189. Defendants' conduct was conscience-shocking and demonstrated deliberate indifference to Z.J.M.'s safety and well-being.

190. This conduct was in clear violation of Z.J.M.'s Fourteenth Amendment rights. The state-created danger doctrine was clearly established at the time of the violations.

191. As a direct and proximate result of Defendants' actions, Z.J.M. suffered damages as described herein.

COUNT VIII: 42 U.S.C. § 1983 - Municipal Liability (Monell) - Against City of Kingsport, Tennessee

192. Plaintiff incorporates by reference all preceding paragraphs.

193. The City of Kingsport is a municipal entity subject to liability under Monell v. Department of Social Services, 436 U.S. 658 (1978) [Status: Good Law as of November 1, 2025].

194. The violations of Plaintiff's and Z.J.M.'s constitutional rights resulted from official policies, widespread practices, and customs of the City of Kingsport, including:

a. A policy or custom of retaliating against citizens for exercising their First Amendment rights, as evidenced by the Gibbons v. City of Kingsport case and the facts alleged herein.

b. A policy or custom of failing to adequately train, supervise, and discipline KPD officers regarding constitutional policing, particularly Fourth and First Amendment rights.

c. A policy or custom of tolerating conflicts of interest and abuse of power by KPD officers.

d. A policy or custom, through City Attorney Rodney Bart Rowlett III's advice, of deeming child abuse reports as "civil matters" that do not require mandated reporting by KCS.

195. These policies, practices, and customs were the moving force behind the constitutional violations suffered by Plaintiff and Z.J.M.

196. The City of Kingsport, through its policymakers and final decisionmakers (including Chiefs Jason Bellamy, Dale Phipps, and City Attorney Rodney Bart Rowlett III), acted with deliberate indifference to Plaintiff's and Z.J.M.'s constitutional rights. The City's failure to discipline officers involved in the Gibbons case, combined with its failure to implement corrective policies after that federal lawsuit, constitutes deliberate indifference that directly caused the violations against Plaintiff. The City's ratification of the unlawful conduct through the involvement of Chief Phipps and Chief Bellamy in both the Gibbons case and Plaintiff's case demonstrates a municipal custom of tolerating First Amendment retaliation.

197. As a direct and proximate result, Plaintiff and Z.J.M. suffered damages as described herein.

## COUNT IX: 42 U.S.C. § 1983 - Municipal Liability (Monell) - Against Kingsport City Schools

198. Plaintiff incorporates by reference all preceding paragraphs.

199. Kingsport City Schools is a municipal entity subject to liability under Monell v. Department of Social Services, 436 U.S. 658 (1978) [Status: Good Law as of November 1, 2025].

200. The violations of Plaintiff's and Z.J.M.'s constitutional rights resulted from official policies, widespread practices, and customs of Kingsport City Schools, including:

a. A policy or custom of failing to report suspected child abuse as mandated by Tenn. Code Ann. § 37-1-403 (current as of November 1, 2025).

b. A policy or custom of failing to adequately train and supervise employees (teachers, counselors, administrators) regarding mandatory reporting obligations.

c. A policy or custom of deferring to City Attorney Rodney Bart Rowlett III's erroneous advice that child abuse is a "civil matter."

d. A policy or custom of retaliating against individuals who report child abuse or criticize school practices.

201. These policies, practices, and customs were the moving force behind the constitutional violations suffered by Plaintiff and Z.J.M.

202. Kingsport City Schools, through its policymakers and final decisionmakers (including Superintendent Dr. Chris Hampton and Former Superintendent Jeff Moorhouse), acted with deliberate indifference to Plaintiff's and Z.J.M.'s constitutional rights. KCS's failure to implement mandatory reporting training or discipline employees after the Carpenter settlement, combined with City Attorney Rowlett's continued provision of erroneous 'civil matter' advice, constitutes a deliberate policy of non-compliance with Tenn. Code Ann. § 37-1-403 that directly caused the failures to report Z.J.M.'s abuse.

203. As a direct and proximate result, Plaintiff and Z.J.M. suffered damages as described herein.

COUNT X: 42 U.S.C. § 1983 - Municipal Liability (Monell) - Against Tennessee Department of Children's Services (DCS)

204. Plaintiff incorporates by reference all preceding paragraphs.

205. The Tennessee Department of Children's Services is a state agency. While generally immune from suit for monetary damages under the Eleventh Amendment, it is subject to suit for prospective injunctive relief and liability for its officials in their individual capacities under Monell v. Department of Social Services, 436 U.S. 658 (1978) [Status: Good Law as of November 1, 2025].

206. The violations of Plaintiff's and Z.J.M.'s constitutional rights resulted from official policies, widespread practices, and customs of DCS, including:

a. A policy or custom of failing to adequately investigate child abuse allegations.

b. A policy or custom of failing to protect children despite long-standing knowledge of abuse.

c. A policy or custom of obstructing justice and suppressing evidence in judicial proceedings.

d. A policy or custom of failing to share records with non-offending parents.

e. A policy or custom of retaliating against non-offending parents who report abuse or seek records.

f. A policy or custom of failing to properly investigate sexual abuse allegations, particularly those involving male child victims, and dismissing credible disclosures based on erroneous beliefs about child memory and development.

207. These policies, practices, and customs were the moving force behind the constitutional violations suffered by Plaintiff and Z.J.M.

208. DCS, through its policymakers and final decisionmakers (including Michael Gilly, Carrie Searcy, Jim Hyche, Kristy Timmerman, Fredia Toombs, and Christina Potter), acted with deliberate indifference to Plaintiff's and Z.J.M.'s constitutional rights. DCS's systemic failures, as documented in the Tennessee Comptroller's audit warning of 'inadequate responses to abuse and neglect allegations,' combined with its documented pattern of refusing services from Defendant Zamora on six occasions without protective action, and the specific actions and statements of Defendant Kelsey McKinney dismissing Z.J.M.'s sexual abuse disclosures based on erroneous beliefs about child memory, constitutes a custom of deliberate indifference that directly

caused Z.J.M.'s continued abuse and Plaintiff's inability to protect him.

209. As a direct and proximate result, Plaintiff and Z.J.M. suffered damages as described herein.

COUNT XI: 42 U.S.C. § 1985(3) - Conspiracy to Deprive Civil Rights - Plaintiff and Z.J.M.

210. Plaintiff incorporates by reference all preceding paragraphs.

211. Defendants, including Chiefs Jason Bellamy, Dale Phipps, Officer Leonard, Officer Hammonds, Officer Zach Calhoun, Officer Hall, Captain William Kevin Clare, Detective Abby Ford, Rodney Bart Rowlett III, Dr. Chris Hampton, Carolyn Suzanne Lewis, Jana Benedict, Sarah Lockett, Tammy Williams, Suzanne Zahner, Mariolou Caunan Zamora, Former Superintendent Jeff Moorhouse, HR Director Jennifer Guthrie, Principal Stacy Edwards, Michelle Carpenter, Michael Gilly, Carrie Searcy, Jim Hyche, Kristy Timmerman, Fredia Toombs, Christina Potter, Tierra Ward, Kelsey McKinney, Rachel VanSant, Christy Pierce, Megan Skerritt, and John/Jane Doe Defendants, conspired and acted in concert to deprive Plaintiff and Z.J.M. of equal protection of the laws and equal privileges and immunities under the laws.

212. The conspiracy involved an agreement, express or tacit, among Defendants to retaliate against Plaintiff for his protected speech and to obstruct justice to protect an alleged child abuser and shield governmental entities from accountability.

213. The conspiracy was motivated by class-based animus against Plaintiffs based on:

a. Disabled Veteran Status: Animous against Plaintiff as a disabled veteran with PTSD, exploiting his known vulnerabilities and the perception that he was easily intimidated or discredited.

b. Protective Parent Status: Animous against Plaintiff as a protective parent who challenged the status quo and exposed systemic failures, seeking to remove him as an obstacle.

c. Biracial Child Status and Sex: Animous against Z.J.M. as a biracial male child, evidenced by the differential treatment of Z.J.M.'s physical and sexual abuse allegations compared to the protection afforded to his mother, Mariolou Caunan Zamora, and the deliberate assignment of Officer Calhoun as SRO knowing Z.J.M.'s trauma and distrust of KPD officers, and the dismissal of credible sexual abuse allegations by Defendant Detective Abby Ford and Defendant Caseworker Kelsey McKinney due to Z.J.M.'s gender as a male victim.

214. The class-based animus is evidenced by: (1) Defendants' differential treatment of Plaintiff as a disabled veteran with PTSD, exploiting his known vulnerabilities, including the filmed threat from Captain Clare; (2) Defendants' protection of Defendant Zamora while targeting Plaintiff, suggesting animus against protective fathers who challenge maternal custody; (3) The deliberate assignment of Officer Calhoun as SRO knowing Z.J.M.'s trauma and distrust of KPD officers, exploiting his status as a biracial child; (4) The pattern of silencing Plaintiff's advocacy, which disproportionately impacts disabled veterans who rely on formal reporting mechanisms due to PTSD-related communication challenges; and crucially, (5) The deliberate dismissal of Z.J.M.'s sexual abuse allegations by Defendant Detective Abby Ford and Defendant Caseworker Kelsey McKinney, as well as the overall

lack of adequate investigation into said allegations, specifically because Z.J.M. is a male child victim, reflecting a discriminatory pattern of treating male child sexual abuse reports with less credibility and urgency.

215. The conspirators took overt acts in furtherance of the conspiracy, including, but not limited to: the June 8, 2024 meeting to 'silence' Plaintiff, the unlawful entry into Plaintiff's home, the unlawful arrest, the baseless criminal prosecution, the suppression of evidence in custody proceedings, the increased KPD patrol presence, the retaliatory SRO assignment, and the deliberate halting and dismissal of the sexual abuse investigation by Defendant Detective Abby Ford without proper inquiry.

216. As a direct and proximate result of the conspiracy, Plaintiff and Z.J.M. suffered violations of their constitutional rights and damages as described herein.

COUNT XII: Tennessee State Law - Malicious Prosecution - Plaintiff

217. Plaintiff incorporates by reference all preceding paragraphs.

218. Defendants Captain William Kevin Clare, Officer Leonard, Officer Hammonds, Officer Zach Calhoun, Officer Hall, and John Doe Officers 1-5 initiated and procured the initiation of a criminal proceeding against Plaintiff.

219. The criminal proceeding was initiated without probable cause.

220. The criminal proceeding was initiated with malice, as evidenced by Captain Clare's threat and the deliberate disregard of exculpatory evidence.

221. The criminal proceeding was terminated in Plaintiff's favor on January 16, 2026.

222. Plaintiff suffered damages as a result of the malicious prosecution.

223. This claim is brought against these Defendants in their individual capacities.

224. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages as described herein.

COUNT XIII: Tennessee State Law - Assault and Battery - Plaintiff

225. Plaintiff incorporates by reference all preceding paragraphs.

226. Defendant Officer Leonard intentionally and unlawfully touched Plaintiff's person, causing offensive bodily contact and physical harm, including a broken left wrist and hyperextended left knee.

227. This contact constituted an assault and battery.

228. This claim is brought against Defendant Officer Leonard in his individual capacity. Defendant Officer Leonard's use of excessive force was outside the scope of his employment, as breaking a compliant arrestee's wrist serves no legitimate law enforcement purpose and constitutes an intentional tort for which governmental immunity does not apply under Tenn. Code Ann. § 29-20-205 (current as of November 1, 2025).

229. As a direct and proximate result of Defendant Officer Leonard's actions, Plaintiff suffered damages as described herein.

COUNT XIV: Tennessee State Law - False Imprisonment - Plaintiff

230. Plaintiff incorporates by reference all preceding paragraphs.

231. Defendants Officer Leonard, Officer Hammonds, Officer Zach Calhoun, Officer Hall, Captain William Kevin Clare, and John Doe Officers 1-5 intentionally confined Plaintiff without his consent and without lawful privilege.

232. Plaintiff was aware of his confinement.

233. This confinement constituted false imprisonment.

234. This claim is brought against these Defendants in their individual capacities. To the extent governmental immunity might apply, these Defendants acted outside the scope of their

employment given the lack of probable cause and the retaliatory nature of the arrest.

235. As a direct and proximate result of Defendants' actions, Plaintiff suffered damages as described herein.

COUNT XV: Tennessee State Law - Intentional Infliction of Emotional Distress - Plaintiff and Z.J.M.

236. Plaintiff incorporates by reference all preceding paragraphs.

237. Defendants' conduct, including but not limited to: the unlawful entry, the unlawful arrest, the excessive force, Captain Clare's threat, the false statement to Z.J.M. that Plaintiff had died in a car wreck, the denial of visitation, the increased KPD patrol presence, and the retaliatory SRO assignment, was extreme and outrageous.

238. Defendants intended to cause, or recklessly disregarded the likelihood of causing, severe emotional distress to Plaintiff and Z.J.M.

239. Plaintiff and Z.J.M. suffered severe emotional distress as a direct result of Defendants' conduct.

240. This claim is brought against all individual Defendants in their individual capacities. To the extent governmental immunity might apply, these Defendants acted outside the scope of their

employment as their actions were not within the ordinary course of their duties and demonstrated malicious intent.

241. As a direct and proximate result of Defendants' actions, Plaintiff and Z.J.M. suffered damages as described herein.

COUNT XVI: Tennessee State Law - Civil Conspiracy - Plaintiff and Z.J.M.

242. Plaintiff incorporates by reference all preceding paragraphs.

243. Defendants, including Chiefs Jason Bellamy, Dale Phipps, Officer Leonard, Officer Hammonds, Officer Zach Calhoun, Officer Hall, Captain William Kevin Clare, Detective Abby Ford, Rodney Bart Rowlett III, Dr. Chris Hampton, Carolyn Suzanne Lewis, Jana Benedict, Sarah Lockett, Tammy Williams, Suzanne Zahner, Mariolou Caunan Zamora, Former Superintendent Jeff Moorhouse, HR Director Jennifer Guthrie, Principal Stacy Edwards, Michelle Carpenter, Michael Gilly, Carrie Searcy, Jim Hyche, Kristy Timmerman, Fredia Toombs, Christina Potter, Tierra Ward, Kelsey McKinney, Rachel VanSant, Christy Pierce, Megan Skerritt, and John/Jane Doe Defendants, combined together to accomplish by concerted action an unlawful purpose, or to accomplish a lawful purpose by unlawful means.

244. The unlawful purpose included, but was not limited to, violating Plaintiffs' constitutional rights, obstructing justice, retaliating against Plaintiff for his protected speech, and protecting an alleged child abuser.

245. The unlawful means included, but were not limited to, the actions described herein, such as the unlawful entry, unlawful arrest, suppression of evidence, retaliatory SRO assignment, and the deliberate halting and dismissal of the sexual abuse investigation by Defendant Detective Abby Ford without proper inquiry.

246. Defendants acted with malice and intent to cause injury to Plaintiff and Z.J.M.

247. This claim is brought against all individual Defendants in their individual capacities. To the extent governmental immunity might apply, these Defendants acted outside the scope of their employment as their actions were not within the ordinary course of their duties and demonstrated malicious intent.

248. As a direct and proximate result of Defendants' actions, Plaintiff and Z.J.M. suffered damages as described herein.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declaratory Relief:

1. Declare that Defendants violated Plaintiff's and Z.J.M.'s rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2. Declare that Defendants violated Plaintiff's and Z.J.M.'s rights under 42 U.S.C. § 1985(3).

3. Declare that the policies, practices, and customs of the City of Kingsport, Kingsport City Schools, and the Tennessee Department of Children's Services are unconstitutional.

4. Declare that the unlawful entry into Plaintiff's home on June 8, 2024, was unconstitutional.

5. Declare that the arrest and prosecution of Plaintiff on June 10, 2024, was unconstitutional and without probable cause.

6. Declare that the use of force against Plaintiff on June 10, 2024, was unconstitutional and excessive.

7. Declare that Defendants retaliated against Plaintiff for exercising his protected First Amendment rights.

B. Injunctive Relief:

1. Issue a preliminary and permanent injunction requiring the City of Kingsport and Kingsport Police Department to:

a. Cease all retaliatory practices against Plaintiff and his family.

b. Implement comprehensive constitutional policing training for all officers, specifically regarding Fourth Amendment search and seizure, First Amendment retaliation, and conflicts of interest.

c. Establish independent civilian oversight for citizen complaints.

d. Discipline officers involved in the constitutional violations alleged herein.

e. Prohibit Officer Leonard from any contact with Plaintiff, Z.J.M., or Defendant Zamora.

f. Immediately reassign Officer Zach Calhoun from Abraham Lincoln Elementary School.

g. Prohibit Officer Calhoun's assignment to any school attended by Z.J.M.

h. Prohibit any KPD officer with personal involvement in this case from serving as SRO at Z.J.M.'s school.

i. Prohibit Defendant Detective Abby Ford from any investigations involving child sexual abuse allegations, particularly those involving Z.J.M. or other male child victims, and mandate retraining on proper investigative protocols and child development.

2. Issue a preliminary and permanent injunction requiring Kingsport City Schools to:

a. Implement comprehensive mandatory reporting training for all employees within 90 days, ensuring compliance with Tenn. Code Ann. § 37-1-403 (current as of November 1, 2025).

b. Ensure compliance with Tenn. Code Ann. § 37-1-403 through monitoring and accountability measures.

c. Cease policies or practices that discourage reporting of suspected child abuse, including advice that child abuse is a "civil matter."

d. Discipline employees who failed to report Z.J.M.'s abuse.

3. Issue a preliminary and permanent injunction requiring the Tennessee Department of Children's Services to:

a. Reform policies and practices to ensure thorough investigation of child abuse allegations.

b. Ensure proper information sharing with non-offending parents as required by law.

c. Implement accountability measures for caseworkers and supervisors who fail to protect children.

d. Provide Plaintiff with all DCS records concerning Z.J.M. to which he is entitled as a non-offending parent.

C. Monetary Damages:

1. Award Plaintiff Jason Scott Moore compensatory damages for his physical injuries, emotional distress, lost wages, legal fees, and other economic and non-economic losses, in an amount to be proven at trial, but in excess of $500,000.

a. Specifically, for economic damages:

i. Medical expenses (broken wrist, hyperextended knee): $25,000

ii. Physical therapy: $10,000

iii. Legal fees for criminal defense: $14,000

iv. Mental health treatment (ongoing): $15,000

v. Lost wages: $30,000

vi. Total Current Economic Damages for Plaintiff: $94,000

b. For non-economic damages: Pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, damage to reputation, loss of consortium and familial relationship.

2. Award Plaintiff Z.J.M. compensatory damages for his emotional distress, psychological trauma, loss of familial association, and other economic and non-economic losses, in an amount to be proven at trial, but in excess of $500,000.

a. Specifically, for economic damages:

i. Past mental health treatment: $10,000

ii. Future mental health treatment: $50,000

b. For non-economic damages: Severe emotional and psychological trauma, loss of society and companionship of his father, anxiety, depression, attachment disorders, loss of stability, and pain and suffering.

3. Award punitive damages against all individual Defendants in their individual capacities, in an amount sufficient to punish their malicious, willful, wanton, and reckless conduct and to deter similar conduct in the future, but in excess of $1,000,000.

4. Award Plaintiff reasonable attorneys' fees and costs of litigation, pursuant to 42 U.S.C. § 1988 and other applicable law.

5. Award pre-judgment and post-judgment interest at the maximum rate allowed by law.

D. Other Relief:

1. Grant trial by jury on all issues so triable.

2. Grant such other and further relief as the Court deems just and proper.

VII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Jason Scott Moore (Pro Se)

1012 Whippoorwill Lane

Kingsport, Tennessee 37660

1-423-480-6750

understindingapples@gmail.com

VERIFICATION

I, Jason Scott Moore, declare under penalty of perjury under the laws of the United States that I have read the foregoing Amended Complaint for Violations of Civil Rights and State Law and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

Executed on November 6, 2025.

JS Moore

Jason Scott Moore